16-541-cv
Weinstein v. Univ. of Conn.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of January, two thousand seventeen.

PRESENT: REENA RAGGI,
DENNY CHIN,
RAYMOND J. LOHIER, JR.,
*Circuit Judges*.

----------------------------------------------------------------------

LUKE WEINSTEIN,

*Plaintiff-Appellant*,

v. No. 16-541-cv

UNIVERSITY OF CONNECTICUT, P. CHRISTOPHER EARLEY,

*Defendants-Appellees*.

----------------------------------------------------------------------

APPEARING FOR APPELLANT: JACQUES J. PARENTEAU, Madsen, Prestley & Parenteau, LLC, New London, Connecticut.

APPEARING FOR APPELLEE: NANCY A. BROUILLET, Assistant Attorney General (Ann E. Lynch, Assistant Attorney General, *on the brief*), *for* George Jepsen, Connecticut Attorney General, Hartford, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Warren W. Eginton, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the January 26, 2016 judgment of the district court is AFFIRMED in part and VACATED in part and REMANDED.

Plaintiff Luke Weinstein appeals from an award of summary judgment to the University of Connecticut ("University") and former dean of its School of Business, P. Christopher Earley, on Weinstein's First Amendment claim of employer retaliation following his complaint of nepotism.[1]  We review an award of summary judgment *de novo*, resolving all ambiguities and drawing all inferences in favor of the non-movant, and we will affirm only if the record reveals no genuine dispute of material fact.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Matthews v. City of New York*, 779 F.3d 167, 171–72 (2d Cir. 2015).  We may affirm on any grounds supported by the record, whether or not relied upon by the district court. *See Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016).  We assume the parties' familiarity with the underlying facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm in part and vacate in part.

A plaintiff claiming First Amendment retaliation must make a *prima facie* showing of (1) constitutionally protected speech, (2) an adverse action, and (3) a causal connection between that adverse action and the protected speech.  *See Matthews v. City*

---

[1] Weinstein does not appeal the summary judgment award to defendants on claims of retaliation for opposition to changes to the Innovation Accelerator program, and, accordingly, we do not review that decision on appeal.

*of New York*, 779 F.3d at 172. An employee's speech is protected if made "as a citizen on a matter of public concern," *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2010), and the employee's interest in so speaking outweighs that of the state in "promoting the efficiency of the public services it performs through its employees," *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014) (internal quotation marks omitted); *see Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968). Even if the plaintiff makes out such a *prima facie* case, a defendant may still be entitled to summary judgment by demonstrating that a reasonable factfinder would have to conclude "that it would have taken the same adverse employment action even in the absence of the protected conduct." *Smith v. County of Suffolk*, 776 F.3d 114, 119 (2d Cir. 2015) (internal quotation marks omitted) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

The district court ruled, and defendants do not dispute on appeal, that Weinstein's May 25, 2010 nepotism complaint was made as a citizen on a matter of public concern. Nor, for purposes of appeal, do defendants argue that the decision not to reappoint Weinstein as Director of the Innovation Accelerator ("IA") program in July 2010, or as an Assistant Professor in Residence in May 2011, are adverse actions. Rather, Weinstein asserts that the district court improperly decided disputed issues of fact in applying the *Pickering* interest-balancing framework and in awarding Earley qualified immunity. *See Weinstein v. Univ. of Conn.*, 136 F. Supp. 3d 221, 233–35 (D. Conn. 2016).

We need not decide these challenges because—even assuming that (1) Earley was aware of Weinstein's nepotism comments, (2) the *Pickering* balance as to those

3

comments favored Weinstein, and (3) Earley was not entitled to qualified immunity—no reasonable jury could conclude from the record presented that, but for Weinstein's comments, he would have been reappointed as Director of the IA program. *See Hartman v. Moore*, 547 U.S. 250, 260 (2006) (holding that if "retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind") (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 287))*; see Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 877 (2d Cir. 1988). To the contrary, a reasonable jury could only conclude that Weinstein would not have been reappointed even absent the nepotism complaint. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 287; *accord Smith v. County of Suffolk*, 776 F.3d at 119.

The record demonstrates that, from March through July 2010, Weinstein repeatedly questioned proposed changes to the IA program, even after a May 10 request by Earley to stop because Weinstein's actions were "counterproductive" to the program goals the school was trying to achieve. App'x 826. Weinstein, however, persisted in raising program concerns with various University personnel, before, in late May, making his comments regarding Earley's nepotism. Nevertheless, in June 2010, Earley, through his assistant, advised Weinstein that he had been nominated for reappointment as IA Director and that the application deadline had been extended to June 25. Weinstein, who took exception to the new application process, never submitted papers.

Soon before his 2009–10 annual term as Director expired, at a July 19, 2010 meeting with Earley and other University officials, Weinstein reiterated his concerns

4

about changes to the program and expressed reservations about being "captain" of a ship that was "going to sink." *E.g.*, *id.* at 668, 674, 683, 698. He did not then renew his nepotism complaint.

In a July 28, 2010 letter notifying Weinstein that he would not be reappointed program Director, Earley cited Weinstein's persistent opposition to program changes as the basis for decision:

> [T]he School [of Business] has significant doubts regarding your commitment or "buy in" to the new program design. . . . Given the changes that we've made to our program . . . it is critical that our Directors embrace the new program design. This was communicated to you several times during our July 19th meeting. Despite this, I was informed [that] you continued to push for conditions . . . that were inconsistent with the redesigned program model but conformed to the way things had been done in the past. Given that this occurred within a few days of our lengthy meeting on July 19th, I don't believe you've embraced the new program/accelerator design. I am concerned that your view strongly expressed during the July 19th meeting referring to the new accelerator program as a "sinking ship" of which you were captain remains and I don't believe this will be productive either for our external constituents, accelerator clients nor our students.

*Id.* at 910. Deposition testimony from University Provost Peter Nicholls corroborates that Weinstein's lack of commitment to the redesigned program motivated the decision not to reappoint him. *See id.* at 509–10. Weinstein does not contest the district court's ruling that his speech regarding the IA program was *not* protected by the First Amendment. Thus, we easily conclude that the record evidence convincingly demonstrates a determinative link between this "nonprotected" speech and the challenged adverse action that would compel a jury to make a preponderance finding that Weinstein would not have been reappointed Director even without his nepotism complaint. *Smith*

5

*v. County of Suffolk*, 776 F.3d at 123. In sum, defendants' *Mt. Healthy* defense succeeds as a matter of law.

In urging otherwise, Weinstein argues that the July 28, 2010 letter gives rise to disputes of material fact. For example, he maintains that Earley offered him the Director position at the July 19, 2010 meeting notwithstanding his critical statements. The record, however, shows that, at the meeting, Earley consistently conditioned reappointment on Weinstein's sincere acceptance of changes to the IA program. Weinstein fails to cite evidence demonstrating his satisfaction of this reappointment condition. Thus, the record convincingly demonstrates, as *Mt. Healthy* requires, that the defendant would have taken the same adverse action even if the impermissible reason had not existed. *See Greenwich Citizens Comm., Inc. v. Ctys. of Warren & Wash. Indus. Dev. Agency*, 77 F.3d 26, 32 (2d Cir. 1996). Further, the text of the July 28, 2010 letter refutes Weinstein's assertion that that letter did not refer to his "conduct prior to, or at, the July 19, 2010 meeting." Appellant's Reply Br. 12 n.14. The letter specifically cites Weinstein's "view strongly expressed *during the July 19th meeting* referring to the new accelerator program as a 'sinking ship' of which you were captain" and refers to ongoing "significant doubts" regarding Weinstein's commitment to the new program. App'x 910 (emphasis added). The meeting transcript makes clear that such doubts were informed by "emails [and] lots of discussion" that had taken place prior to the meeting. *Id.* at 711. In sum, Weinstein's post-meeting conduct was not the sole reason for the adverse action; rather, it was cited as further evidence of his lack of commitment to the redesigned program.

6

Weinstein also argues that his failure to submit a reappointment application, cited in the July 28, 2010 letter, was used as a "pretext" for adverse action that was actually premised on his nepotism complaint. Appellant's Reply Br. 8 & n.9. Even if a "pretext" inquiry were appropriate here, *see Holo-Krome Co. v. N.L.R.B.*, 954 F.2d 108, 110 (2d Cir. 1992) (distinguishing between "pretext" analysis, which determines true motivation, and "dual motivation analysis," detailed in *Mt. Healthy*, which determines what employer's conduct would have been even absent improper motivation), the July 28, 2010 letter and record evidence make clear that Weinstein's persistent opposition to the IA program was the reason he was not reappointed. *See* App'x 910. Thus, even assuming that a jury could find Earley to have waived the application requirement for Weinstein, thereby casting doubt on the legitimacy of *that* reason for non-reappointment, that does not here raise a triable issue of fact as to Weinstein's reappointment as Director but for his nepotism complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (explaining that "[f]actual disputes that are irrelevant or unnecessary will not be counted" as material and therefore do not preclude summary judgment).

Weinstein argues that the district court nevertheless erred in granting summary judgment on his claim that he was denied reappointment as an Assistant Professor in May 2011 on retaliatory grounds. In support, Weinstein has identified as protected speech not only his nepotism comments, but also the September 2010 grievance that he filed after the adverse Director decision but before the adverse Assistant Professor decision. Weinstein correctly notes that the district court did not expressly address this retaliation claim in its January 21, 2016 decision. We "generally will not review an issue the

7

district court did not decide." *Macey v. Carolina Cas. Ins. Co.*, 674 F.3d 125, 131 (2d Cir. 2010) (internal quotation marks omitted). Accordingly, we vacate the summary judgment award only insofar as it pertains to this adverse action and remand so that the district court can address this aspect of Weinstein's retaliation claim in the first instance.

We have considered Weinstein's remaining arguments and conclude that they are without merit. Accordingly, for the reasons stated, the January 26, 2016 judgment of the district court is AFFIRMED in part and VACATED and REMANDED in part.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court